```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION

REKAL COMPANY, INC.,

        Plaintiff,
v.                                   Case No. 8:13-cv-1433-T-33TGW

PGT INDUSTRIES, INC. and
JLL PARTNERS, INC.,

        Defendants.
_____/
```

**ORDER**

This matter comes before the Court pursuant to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. # 5), which was filed in the United States District Court for the Middle District of Georgia on May 24, 2013. Defendants filed a Response to the Motion (Doc. # 8) on May 30, 2013, and Plaintiff filed a Reply (Doc. # 9) on May 31, 2013.

The Georgia Court held a hearing on the Motion on May 31, 2013, and on that same day issued an Order pursuant to the hearing transferring this case to this Court pursuant to a binding forum selection clause. (Doc. # 11). In the Order of Transfer, the Georgia Court noted: "The Court is sensitive to the fact that Plaintiff seeks immediate injunctive relief; and if the Court were convinced that Plaintiff was entitled to such relief, the Court would be inclined to grant that relief

before transferring venue. But the Court is not so convinced and consequently finds it appropriate not to delay transfer of this action to the venue where the parties agreed such a dispute would be litigated." (Id. at 3). The Court determines that it has jurisdiction over this matter based upon the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. In addition, the Court finds venue to be appropriate. Accordingly, the Court will address Plaintiff's request for injunctive relief.

**I.  Background**

According to the Complaint, Plaintiff Rekal entered into an "Authorized Distribution Agreement" with Defendants PGT and JLL. (Doc. # 1 at ¶ 8). The products subject to the Agreement are custom doors, enclosures, and porches. Rekal contends that it developed and implemented a system for "On-line, direct sales to consumers" of PGT's Eze-Breeze products. (Id. at ¶ 7). Rekal alleges that it created "from the ground up" the "'ezebreeze.com' web domain and multiple other related web domains (using variations of the terms 'ezebreeze' and 'eze-breeze')", all with "PGT's blessing." (Id. at ¶ 8).

Rekal further alleges that, due to its online innovations, it generated more than $2 million in sales in Rekal's first four years of business. (Id. at ¶ 10).

2

In October 2012, Defendants indicated that Rekal was infringing upon Defendants' "Eze-Breeze" trademarked logo. (Id. at ¶ 14). The parties unsuccessfully negotiated the issue and on April 19, 2013, counsel for PGT sent Rekal a cease and desist letter warning Rekal that it had 30 days to turn over the ezebreeze.com and related web domains or Defendants would stop distributing products to Rekal. Rekal did not turn over the web domains, and Defendants placed a hold on Rekal's account. It appears that Defendants have declined to furnish PGT products to Rekal for distribution. Defendants contend that they are under no contractual obligation to continue to furnish PGT products to Rekal.

Rekal filed this action against Defendants for breach of contract (count 1), detrimental reliance (count 2), fraud in the inducement (count 3), extortion and intentional interference with prospective business (count 4), and reverse domain name hijacking (count 5). Rekal seeks $10 million in compensatory damages as well as punative damages.

In conjunction with the filing of the Complaint, Rekal filed its Motion for Temporary Restraining Order and Preliminary Injunction, which is ripe for the Court's review.

II. **Motion for TRO**

Rekal seeks an Order enjoining Defendants from

"placing/maintaining indefinite 'holds,' harassing, intimidating, interfering, extorting and/or otherwise discontinuing sales of [Defendant's] PGT products to Rekal" and requiring Defendants to "abide by all the terms of Rekal's 'authorized Distributorship Agreement' with [Defendants]." (Doc. # 5-3 at 2). Rekal supports its Motion with the Affidavit of Sean M. Laker, Rekal's Director of Sales (Doc. # 5-2 at 48-64) and various other documents. Laker espouses the argument that Rekal has not infringed any of Defendants' trademarks and that due to Defendants' failure to furnish PGT products, Rekal faces substantial business hardships, including lost profits amounting to $20,000 to $30,000 per week. (Id. at ¶¶ 6, 37).

A party seeking a Temporary Restraining Order must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs any harm relief would inflict on the non-movant; and (4) that entry of relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223-1225-56 (11th Cir. 2005). As the Plaintiff, Rekal bears the heavy burden of persuasion as to each factor. Canal Auth. of Fla.

4

v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974).[1] Furthermore, "even if [the movant] establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make [] injunctive relief improper." Siegel v. Lepore, 237 F.3d 1163, 1176 (11th Cir. 2000).

Here, the Court is unable to ascertain whether Rekal is likely to succeed on the merits of its claims. The parties have filed conflicting evidence, including affidavits and declarations, touching on the issue of ownership of the relevant trademarks, which forms the basis for the present dispute. Further briefing and fact finding are required when it comes to addressing the likelihood of success on the merits. Nevertheless, the Court denies the Motion for TRO because, regardless of Rekal's chances at ultimately prevailing in this action, money damages, which have been requested, are a suitable remedy for the injury Rekal has allegedly sustained. The Court tends to agree with Defendants argument that "should [Plaintiff] prevail, monetary damages will make Plaintiff whole." (Doc. # 8 at 8-9).

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all cases decided by the Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981, as binding precedent.

The Eleventh Circuit has stressed that the threat of irreparable harm is an absolute prerequisite to the issuance of injunctive relief. See NE Fla. Chapter v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)(the showing of irreparable harm is "the sine qua non of injunctive relief."). Furthermore, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Sampson v. Murray, 415 U.S. 61, 88 (1974). Based on the submissions now on the record, the Court cannot find that Rekal faces an irreparable injury. Rather, it appears that any injuries Rekal has sustained may be cured by an award of damages.

In addition, Rekal has failed to address, and thus failed to establish, that its threatened injuries outweigh any harm that its requested relief would inflict on Defendants and that the TRO would serve the public interest. Thus, the Court denies the Motion for a TRO.

In so denying the Motion, the Court emphasizes that it does not have any opinion regarding whether a Preliminary Injunction should issue. The Court refers the Motion for a Preliminary Injunction to the Magistrate Judge for the issuance of a Report and Recommendation.

Accordingly, it is hereby

6

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff's Motion for a Temporary Restraining Order (Doc. # 5) is **DENIED**.

(2) The Court hereby refers Plaintiff's request for a Preliminary Injunction (Doc. # 5) to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for the issuance of a Report and Recommendation.

**DONE** and **ORDERED** in Tampa, Florida, this 3rd day of June, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:  All Counsel and Parties of Record

7