UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REKAL COMPANY, INC.,

    Plaintiff,
v.                                  Case No. 8:13-cv-1433-T-33TGW

PGT INDUSTRIES, INC.,

    Defendant.
_____/

## ORDER

This matter comes before the Court pursuant to Defendant PGT Industries, Inc.'s Motion for More Definite Statement and/or Motion to Dismiss (Doc. # 79), filed November 4, 2013. Plaintiff Rekal Company, Inc., filed a Memorandum in Opposition (Doc. # 84) on November 25, 2013. PGT filed a Reply (Doc. # 93) on December 12, 2013. For the reasons that follow, the Court grants the Motion to Dismiss as to Count I of the operative Complaint.

## I. Factual Background

PGT Industries, Inc. is a Florida corporation with its principal place of business in North Venice, Florida. (Doc. # 72 at ¶ 2). PGT is the owner of the registered trademark Eze-Breeze. (Doc. # 72-8 at 5-7). Rekal is a "small, family owned and operated" business located in Hull, Georgia. (Doc. # 72 at ¶ 1). On May 15, 2009, PGT notified Rekal that it "met the standards required of a PGT Industries distributor

for the purchase and distribution of [PGT's] many fine product lines." (Doc. # 72-2).

Rekal developed and implemented a system for online, direct to consumer sales of PGT's Eze-Breeze products (Doc. # 72 at ¶ 6). Rekal alleges that it built its online sales program "from the ground up," and it purchased the "ezebreeze.com" domain name and other related domain names with PGT's "blessing." (Id.).

In October of 2012, PGT accused Rekal of trademark infringement and demanded that Rekal "turn over" all domain names containing the terms "ezebreeze" and "eze-breeze." (Id. at ¶ 13). The parties did not resolve the dispute, and counsel for PGT sent a cease and desist letter to Rekal on April 19, 2013. (Doc. # 72-8). The letter gave notice that PGT would discontinue sales of all PGT products to Rekal in thirty days. (Id. at 3-5).

On May 7, 2013, Rekal responded to the cease and desist letter by denying "any violation of the 'Eze-Breeze' registered trade-mark or any other alleged wrong doing or damage" to PGT. (Doc. # 72-9 at 2). Rekal also set forth potential claims against PGT and proposed options for settling the parties' dispute. (Doc. # 72 at ¶ 15).

Subsequently, on May 20, 2013, Rekal's sales director, Sean Laker, attempted to place an order with PGT and was informed that Rekal's account had been placed on hold. (Id. at ¶ 17). On May 24, 2013, PGT advised Rekal, through counsel, that Rekal could resume selling Eze-Breeze products if it relinquished the pertinent domain names to PGT. (Id. at ¶ 18). Rekal declined. (Id.).

As a result of PGT's hold on its account, Rekal sought alternative suppliers and products. (Id. at ¶ 20). Rekal "began working as a dealer" for S-TEK Aluminum Building Products, LLC ("S-TEK"), also a PGT distributor, on or about May 23, 2013. (Id.). On June 28, 2013, however, PGT sent a letter to S-TEK requesting that S-TEK "cease selling or otherwise providing any PGT manufactured EZE-BREESE product to former dealer, Rekal Company, Inc." (Doc. # 72-12 at 2). On July 8, 2013, S-TEK notified Laker that PGT would no longer sell to Rekal. (Id.).

## II. Procedural History

Rekal commenced this action against PGT and JLL Partners, Inc. in the United States District Court for the Middle District of Georgia on May 24, 2013. (Doc. # 1). The Complaint alleged breach of contract, detrimental reliance,

fraud in the inducement, extortion, intentional interference with prospective business, and reverse domain name hijacking. (Id.).

On May 30, 2013, PGT and JLL Partners, Inc. responded, arguing, among other things, that venue was not proper in the Middle District of Georgia based on a forum-selection clause in PGT's Terms and Conditions. (Doc. # 8). The action was transferred to this Court because Rekal "failed to rebut the presumptive validity of the forum selection clause." (Doc. # 11 at 3).

At Rekal's request, (Doc. # 32), the Court dismissed JLL Partners, Inc. from this action without prejudice on July 9, 2013. (Doc. # 33). Thereafter, with the Court's permission (Doc. # 39), Rekal filed a Second Amended Complaint on July 23, 2013, alleging breach of contract, equitable estoppel based on detrimental reliance, and tortious interference with a prospective business relationship. (Doc. # 40). The Second Amended Complaint also requested declaratory relief. PGT moved to dismiss each count of the Second Amended Complaint on August 6, 2013, (Doc. # 42), and on September 30, 2013, the Court

granted the motion as to each count except for the declaratory judgment claim. (Doc. # 69).

Rekal was granted leave to file a Third Amended Complaint, (Id. at 22), which it did on October 9, 2013. (Doc. # 72). The Third Amended Complaint contains two counts: Tortious Interference with Prospective Business (Count I), and Declaratory Judgment (Count II). (Id.). On November 4, 2013, PGT filed its "Motion for More Definite Statement and/or Motion to Dismiss Plaintiff's Third Amended Complaint." (Doc. # 72). Despite the title of the Motion, PGT only presents arguments concerning Count I of the Third Amended Complaint. As explained below, the Court grants the Motion to Dismiss as to Count I and declines to require Rekal to present a more definite statement of its claim for declaratory relief, asserted in Count II.

### III. Legal Standard

In reviewing a motion to dismiss for failure to state a claim, a trial court accepts as true all factual allegations in the complaint and construes the facts in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). However, courts are not "bound to accept as true a legal conclusion couched as a

factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Bell Atlantic Corp. v. Twombly, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**IV. Analysis**

Rekal alleges in Count I that PGT tortiously interfered with Rekal's business relationship with S-TEK. (Doc. # 72 at

-6-

¶¶ 31-37). The elements comprising the tort of interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." Int'l Sales & Serv. v. Austral Insulated Prods., 262 F.3d 1152, 1154 (11th Cir. 2001) (citing Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994)).

PGT moves to dismiss Count I, arguing that Rekal fails to sufficiently plead the first element. Rekal, in arguing for the existence of a business relationship between itself and S-TEK, attaches to the Third Amended Complaint a "Redacted copy of the agreements between S-TEK and Rekal." (Doc. # 72-11). That document consists of an e-mail communication from S-TEK's Delano E. Smith and an S-TEK "Dealer Opportunity Application." In the e-mail, Smith proposes a process by which Rekal and S-TEK could transact business:

> I think the way we will set your company up is as a dealer with S-tek Aluminum Building Products, LLC . . . . Sales process: Rekal Co. make the sell getting customers to sign off on order and collect

> the funds. Send copies of the sale and products to order with funds for cost plus [redacted] shipping and taxes. S-tek ABP will process order and ensure delivery to customers and assist in discrepencies [sic] and warranty issues with PGT and customers.

(Doc. # 72-11 at 1). The "Dealer Opportunity Application" contains Rekal's applicant information and a signature from Kathleen Laker, Rekal's President and CEO, at the bottom. (Id. at 2).

According to PGT:

> The purported "agreement" that Rekal seeks to base this count on is not an agreement which affords Rekal any legal rights. By the very nature of the purported "agreement" between Rekal and S-Tek, the only possible scenario in which S-Tek can provide Rekal with PGT products is through the placing and acceptance of a product order with PGT. Even if PGT never became aware of the sales of its products from S-Tek to Rekal, there is no guarantee that the orders placed by S-Tek would have been accepted.

(Doc. # 79 at 11). The Court agrees.

There is no contract alleged between Rekal and S-TEK. Though S-TEK "set [Rekal] up" as a "dealer," that title bestows no legal rights upon Rekal because neither party consented to any specified obligations. Both parties to the agreement say, "in effect, 'I will if I want to'" — Rekal, to place orders, and S-TEK, to accept and fill them. See Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,

162 F.3d 1290, 1311 (11th Cir. 1998). Such agreements, "[w]here one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract," create "no valid contract and neither side may be bound." Rosenberg v. Lawrence, 541 So. 2d 1204, 1206 (Fla. 3d DCA 1988).

It is true that, for the purposes of the first element, a business relationship "may exist without the presence of an actual enforceable contract." Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc., 361 So. 2d 769, 771-72 (Fla. 4th DCA 1978). That relationship, however, must have "some attendant legal rights." Id. A jury must be able to find that "an understanding between the parties would have been completed had the defendant not interfered." Landry v. Hornstein, 462 So. 2d 844, 846 (Fla. 3d DCA 1985).

Rekal fails, however, to allege that the relationship between itself and S-TEK was, if not contractual in nature, then of some other nature that would merit its privilege from third party interference. Florida law has recognized the existence of a business relationship only where parties have an understanding as to a specific transaction that has gone beyond the "mere offer" stage. See Lake Gateway, 361

So. 2d at 772 ("A mere offer to sell a business which the buyer says he will consider, does not by itself give rise to legal rights which bind the buyer or anyone else with whom he deals."); compare <u>Charles Wallace Co., Inc. v. Alternative Copier Concepts, Inc.</u>, 583 So. 2d 396, 397 (Fla. 2d DCA 1991) (finding a valid business relationship between two parties who had an understanding as to price, number of units, and delivery, in regards to a sale of copiers) <u>and</u> <u>Hornstein</u>, 462 So. 2d at 846 (finding a valid business relationship where two parties had an understanding as to the sale of a business and assignment of a lease) <u>with</u> <u>Dwight v. Tobin</u>, 947 F.2d 455, 460 (11th Cir. 1991) (finding no valid business relationship between two parties with an oral partnership agreement lasting over a year).

Rekal alleges no accepted orders that S-TEK left unfilled as a result of PGT's letter. The agreement itself indicates no minimum number of units to be purchased, no set duration of exclusivity, no understanding between the parties which would have or could have been completed. <u>See</u> <u>Hornstein</u>, 462 So. 2d at 846. The Court finds that Rekal has alleged no relationship between itself and S-TEK

creating attendant legal rights, and therefore it fails to meet the first element of the tort.

Furthermore, under Florida law, a cause of action for tortious interference does not exist against a party unless it is "a third party, a stranger to the business relationship." Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 386 (Fla. 4th DCA 1999). "A defendant is not a stranger to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc., 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (internal quotations omitted).

Here, PGT had both an interest in and control over the relationship between Rekal and S-TEK. PGT profited from selling Eze-Breeze products to S-TEK, who would then profit from re-selling those products to Rekal. All the while, PGT retained the right to discontinue sales to S-TEK for any reason it saw fit. Requesting that S-TEK "cease selling or otherwise providing any PGT manufactured EZE-BREEZE product to . . . Rekal Company, Inc.," was PGT's prerogative as S-TEK's source of Eze-Breeze products. PGT was not a third party to the relationship between Rekal and S-TEK, but the

most essential party to the entire arrangement. Thus, Rekal cannot sustain a claim against PGT for tortious interference with prospective business. As such, the Court grants PGT's Motion to Dismiss as to Count I.

PGT does not present the Court with any arguments in favor of dismissal as to Count II, for declaratory relief, and the Court declines to require Rekal to file a more definite statement of that claim pursuant to Rule 12(e). PGT has not convinced the Court that Count II the Third Amended Complaint is "so vague or ambiguous that [PGT] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED**:

PGT's Motion to Dismiss (Doc. # 79) is **GRANTED** to the extent that Count I of Rekal's Third Amended Complaint is dismissed. The Motion is otherwise denied.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 2nd day of January, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel of Record